THE STATE OF NEW JERSEY, v. WALTER READE, DEFENDANT-APPLICANT.

Submitted October 7, 1947—Decided January 19, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the State of New Jersey, *J. Victor Carton,* Prosecutor of the Pleas in and for the County of Monmouth.

For the defendant-applicant. *Harry Green.*

The opinion of the court was delivered by

EASTWOOD, J.   Defendant, Walter Reade, applies to this court for three writs of *certiorari* to review the validity of indictments returned against him for criminal libel by the grand jury of Monmouth County.   He advances the same grounds for the allowance of the three writs, viz.:

"(a) The indictment fails to set forth and charge a crime and the same appears on the face of said indictment, and

"(b) The indictment fails to set forth facts sufficient to constitute the crime of criminal libel."

The three applications are submitted as one issue and to be decided accordingly.   A motion to quash said indictments was made to and denied by the Honorable J. Edward Knight, presiding over the Monmouth County Court of Quarter Sessions.   Subsequently, an application for writs of *certiorari* to review said indictments was made to and denied by Supreme Court Justice William A. Wachenfeld.

Under Point I, defendant contends that the three indictments are invalid because they fail to allege that the defamation charged against the defendant was in writing or printed and, therefore, the omission of said words makes the indictments fatally defective.   Each of the indictments alleges that the defendant "did compose and publish a * * * defamatory libel of and concerning * * *" and sets forth in full the alleged defamatory article.   All textbook writers and the decisions of our courts are in accord that "libel" is any printed or written defamation of a person, published maliciously and without justification.   Mr. Justice Hendrickson, speaking for the Court of Errors and Appeals in *Benton* v. *State,* 59 *N. J. L.* 551 (at *p.* 556), stated:

"It is the language of authority that any written or printed words are libelous which impute to a person that he has been guilty of any crime, fraud, dishonesty, immorality, vice or dishonorable conduct, or which have a tendency to injure him in his office, profession, calling or trade."

The common acceptation and meaning of the word "libel," is, as stated, a written or printed defamatory publication, as contrasted with an oral, or slanderous, statement.

Under Point II, defendant contends that the indictments do not set forth facts to constitute the crime of libel; that the articles alleged to have been published by defendant are not libelous *per se*. We find no merit to this contention. In *Benton* v. *State, supra,* it was held, *inter alia:*

"The charges made by this article are so clearly within the range of criminal libel, as thus defined, that further discussion on this point seems unnecessary.

"It is equally plain that no valid objection lies to the fact that there are no innuendoes set forth in this indictment in connection with the libelous words. The office of an innuendo, in such a connection, is to express and render certain the meaning of equivocal or uncertain language or to bring out some latent meaning in the words necessary to fix their defamatory character. It has a further office—to explain to whom the defamatory language refers where that is left uncertain without it.

"But the doctrine is well settled that when the plain, natural meaning of the words is libelous, no innuendo is required. *State* v. *Mott,* 16 *Vr.* 496; *Rex* v. *Burdett,* 4 *Barn. & A.* 314; *Hoare* v. *Silverlock,* 12 *Ad. & E.* (*N. S.*) 624; *Croswell* v. *Weed,* 25 *Wend.* 621."

In the "Armstrong indictment," under consideration here, following the recital that defendant "unlawfully and maliciously did compose and publish a certain false, scandalous, malicious and defamatory libel of and concerning the said Oliver Armstrong * * *" followed by complete copy of the defamatory statement, the indictment alleges:

"which said libelous words and matters then and there were used by the said Walter Reade in a defamatory sense, to wit, in the sense that he the said Oliver Armstrong received graft, bribes, and unlawful aggrandisements to influence him in his official duties as city manager of the City of Asbury Park and that he the said Oliver Armstrong withheld the sum of nine hundred dollars from the City of Asbury Park and fraudulently converted the said monies to his own use, and further

that he the said Oliver Armstrong was and is guilty of certain acts of official culpability which warrant prosecution by Franklin H. Berry, deputy attorney-general appointed by the Attorney-General of the State of New Jersey to inquire into the acts, business and affairs of the City of Asbury Park, to the great injury, scandal and disgrace of the said Oliver Armstrong, * * *."

In the "Rediker indictment," *inter alia,* the following language was used:

"which said libelous words and matters then and there were used by the said Walter Reade in a defamatory sense, to wit, in the sense that he the said Joe Rediker plundered, stole and employed political chicanery to gain his unlawful ends and to promote his business enterprises in the City of Asbury Park; that he the said Joe Rediker had bribed and illegally influenced officials of the City of Asbury Park to award him contracts to operate bathing and dance hall concessions of the public property of the City of Asbury Park; and that he the said Joe Rediker acquired the money with which to buy the Monte Carlo pool of the said Walter Reade through black-market practices and political 'fixes,' to the great injury, scandal and disgrace of the said Joe Rediker, * * *."

In the "McMurray indictment," *inter alia,* the following language was used:

"which said libelous words and matters then and there were used by the said Walter Reade in a defamatory sense, to wit, in the sense that he the said Wayne D. McMurray, had violated the law, committed criminal indiscretions and was of an infamous character and that he had tampered with judicial process, obstructed justice, illegally influenced and bribed witnesses and officers and officials of the Courts of the County of Monmouth, State of New Jersey; and that he had indulged in falsehoods and deceptions and misrepresentations in the *Asbury Park Press* to deceive the public, to the great injury, scandal and disgrace of the said Wayne D. McMurray, * * *."

It will thus be seen that the indictments completely and adequately apprise the defendant of the crime charged against him.

The applications are denied, with costs.